In re the PEOPLE of the State
of Colorado, Plaintiff,

v.

Aaron Dean SISNEROS, Defendant.

No. 02SA117.

Supreme Court of Colorado.

Oct. 7, 2002.

Altman, Keilbach, Lytle, Parlapiano & Ware, P.C., David E. Ware, Pueblo, Colorado, Attorneys for Dr. Nancy Aldrich, Petitioner.

Mika & Associates, P.C., Patrick D. Mika, Colorado Springs, Colorado, Attorneys for Defendant.

Justice RICE delivered the Opinion of the Court.

This original proceeding arises out of a criminal case currently pending in the Pueblo County District Court. The Petitioner, Dr. Nancy Aldrich, seeks to prevent the District Court from enforcing a subpoena *duces tecum* requiring her to provide "[a]ny and all files, documents, and reports" relating to her treatment of the victim of the alleged sexual assault at issue in the criminal case. The trial court denied Petitioner's motion to quash the subpoena *duces tecum.* Instead, it ordered her to turn over the records for an *in camera* review. We issued a rule to show cause to Defendant.

We hold that the psychologist-patient privilege applies and shields the documents requested by Defendant from discovery—even *in camera* review by the trial court. Once the privilege attaches, the privilege holder must waive, explicitly or implicitly, the privilege before Defendant can obtain discovery. The victim's testimony at the preliminary hearing did not constitute a waiver of the privilege. Since there was no waiver, the subpoena *duces tecum* should have been quashed. The trial court did not have discretion to conduct an *in camera* review of the documents. The rule to show cause is made absolute.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, Aaron Dean Sisneros, has been charged with sexual assault on a child by one in a position of trust in violation of section 18–3–405.3(1), 6 C.R.S. (2002). Because this case is in the pre-trial stage, the facts of the alleged assault are based entirely on the victim's testimony at the preliminary hearing. The victim testified that she was sexually assaulted by the Defendant at his home during a sleepover with Defendant's daughter, a friend of the victim. Defendant's daughter, although in the same room, was asleep at the time and there were no other witnesses.

The victim remained largely silent regarding the incident until June 2001—some six or seven months later. At that time, she informed her parents who in turn reported the assault to law enforcement. After the alleged assault was revealed to the victim's parents and reported to authorities, the victim began meeting with Dr. Nancy Aldrich, a state-licensed psychologist.

On the basis of the victim's accusations, the Defendant was arrested and charged. The information alleged that the incident oc-

curred sometime in November 2000. However, during the preliminary hearing, the date of the incident became the subject of controversy. During cross-examination, defense counsel asked the victim when the assault took place and the following exchange occurred:

> Victim: I don't recall the exact date. But me and my counselor did go through it and figured out that it was somewhere—it was Christmas vacation and—but it was before Christmas came, so probably about the weekend before Christmas. Because I remember on the way to his house, we were all singing Christmas carols, and he was talking about the Jingle Bell Rock. And she helped me narrow things down like that, and—
>
> Defense Counsel: Who is "she"?
>
> Victim: Nancy Aldrich.
>
> Defense Counsel: So Nancy Aldrich helped you or told you—helped you find out what date this occurred?
>
> Victim: Yes.

Based on this testimony, the prosecutor moved to amend the information to allege that the assault occurred in "November or December." The trial court allowed the amendment.

In March 2002, Defendant issued a subpoena *duces tecum* requesting that Dr. Aldrich produce "[a]ny and all files, documents and reports relating to [victim] . . . regarding her therapy with you and or associates of your office." Dr. Aldrich filed a motion to quash the subpoena *duces tecum*, arguing that the records were protected by the psychologist-patient privilege. *See* § 13–90–107(1)(g), 5 C.R.S. (2002). At the hearing on the motion, the trial court recognized the existence of the psychologist-patient privilege and, rather than allow Defendant full, unrestricted access to the records, expressed its intention to review the documents *in camera*. It is unclear from the transcript of the hearing what the trial court intended to excise from the Petitioner's records. The court simply indicated that it planned to do a review to determine if there is "something that may be relevant." Petitioner's motion to quash was denied. Dr. Aldrich filed a petition for a rule to show cause pursuant to C.A.R. 21 and this court issued an order to show cause to the Defendant. The trial court received Dr. Aldrich's records and placed them under seal, pending this court's decision on whether an *in camera* review is appropriate.

## II. ORIGINAL JURISDICTION

■ In general, pretrial discovery orders are interlocutory in nature and not reviewable in an original proceeding. *See Caldwell v. District Court,* 644 P.2d 26, 30 (Colo.1982). However, this court has discretion under C.A.R. 21 to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *See Kerwin v. District Court,* 649 P.2d 1086, 1088 (Colo.1982). In this case, if Petitioner is wrongfully required to disclose confidential records, the damage will occur upon disclosure, regardless of any ruling on appeal. Therefore, we find it appropriate to exercise our original jurisdiction.

## III. ANALYSIS

The issue before this court is whether the trial court has discretion to review Petitioner's documents *in camera* absent a waiver of the psychologist-patient privilege. Petitioner argues that the documents requested by Defendant are covered by the psychologist-patient privilege and without a waiver by the privilege holder the trial court lacks discretion to review the documents. Defendant contends that the privilege is not absolute and the trial court has discretion to review Petitioner's documents to determine "which documents are covered by [the] privilege, whether the privilege is abrogated, and whether there are uses for the documents that do not implicate the privilege." Def.'s Resp. at 8–9.

The psychologist-patient privilege enjoys widespread acceptance, both in Colorado and throughout the country. *See Jaffee v. Redmond,* 518 U.S. 1, 12, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (noting that at the time of the opinion, all fifty states and the District of Columbia had some form of psychotherapist-patient privilege). In Colorado, the privilege was established by statute and is codified in

section 13–90–107(1)(g), 5 C.R.S. (2002), which provides:

A licensed psychologist ... or unlicensed psychotherapist shall not be examined without the consent of such licensee's or unlicensed psychotherapist's client as to any communication made by the client to such licensee or unlicensed psychotherapist, or such licensee's or unlicensed psychotherapist's advice given thereon in the course of professional employment. ...

■ The purpose of the psychologist-patient privilege is to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the psychologist's disclosure of information divulged by the client during the course of treatment. *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983). While this is the same policy that supports the physician-patient privilege, this court has noted that the justification is even more compelling when applied to the psychologist-patient relationship. *Bond v. District Court*, 682 P.2d 33, 38 (Colo.1984) ("A physical ailment may be treated by a doctor whom the patient does not trust, but if a psychologist or psychiatrist does not have the patient's trust, the therapist cannot treat the patient."). The policy is especially pronounced in this case because of the sensitive nature of the treatment of sexual assault victims:

[I]t is of paramount importance to assure a victim of a sexual assault that all records of any treatment will remain confidential unless otherwise directed by the victim. The knowledge that the alleged assailant would be entitled to discover these otherwise privileged documents could hamper a victim's treatment progress because of her unwillingness to be completely frank and open with the psychotherapist.

*People v. District Court*, 719 P.2d 722, 726–27 (Colo.1986).

■ The psychologist-patient privilege shields more than just communications between the psychologist and the patient. *See Clark*, 668 P.2d at 8. Once it attaches, the psychologist-patient privilege protects testimonial disclosures as well as pretrial discovery of files or records derived or created in the course of the treatment. *Id.; Dill v. People*, 927 P.2d 1315 (Colo.1996) (notes and reports from ongoing counseling sessions properly excluded under the psychologist-patient privilege).

■ Once the privilege has attached, the Defendant may not compel discovery unless it is waived. *Clark*, 668 P.2d at 9; *People v. District Court*, 719 P.2d at 727; *People v. Tauer*, 847 P.2d 259, 261 (Colo.App. 1993)("Once the privilege applies, the only basis for allowing any disclosure of information is waiver by the person holding the privilege."). This conclusion is warranted based on the plain language of the statute. *Clark*, 668 P.2d at 10. Section 13–90–107(1)(g) provides that privileged information cannot be disclosed "without the consent" of the privilege holder. This "consent" requires an evidentiary showing that the privilege holder expressly or impliedly has given up any claim of confidentiality as to communications with the psychologist. *Clark*, 668 P.2d at 10.

■ This evidentiary showing of waiver is required before the trial court may order the documents produced for an *in camera* review. *See People v. District Court*, 719 P.2d at 727. In *People v. District Court*, a sexual assault victim obtained counseling from a psychotherapist. Defendant served the therapist with a subpoena *duces tecum* requesting production of all victim's treatment records. The trial court ordered the documents be produced for an *in camera* review and determination of whether the information would be relevant to either the substantive issues in the case or the credibility of the witness. *Id.* at 724. This court held that the trial court erred:

[T]he defendant is not entitled to examine the victim's post-assault psychotherapy records or to have the trial court review such records *in camera* on the basis that the records might possibly reveal statements of fact that differ from the anticipated testimony of the victim at trial.

*Id.* at 727. *See also Dill*, 927 P.2d at 1324 (defendant not entitled to have the trial court review psychologist's notes *in camera* where he was merely conducting a "fishing expedi-

tion" in search of exculpatory information that he had no reason to believe would be found).

There is no doubt in this case that Petitioner and the victim have a psychologist-patient relationship. Petitioner is a state-licensed psychologist retained to help the victim overcome the emotional consequences of the alleged assault. To be effective, the therapy requires a high degree of trust between the Petitioner and the victim. Any breach of the confidentiality surrounding the relationship would harm the victim's progress in treatment.

Therefore, the issue is whether the victim's testimony at the preliminary hearing constituted a waiver of the privilege. Defendant contends that the victim waived the protection of the privilege by testifying at the preliminary hearing. At that hearing, the victim testified that the assault occurred in December, rather than November as originally charged in the information. She explained that while she originally could not remember when the assault occurred, her discussions with Petitioner aided her in narrowing down the date.

■ To determine whether there was a waiver, the proper inquiry is not whether the information sought may be relevant. *Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo.1999). Some sacrifice of relevant information is "warranted by the social importance of interests and relationships" that the privilege seeks to protect. *Id.* Instead, the proper inquiry is whether the victim has injected her physical or mental condition into the case as the basis of a claim or an affirmative defense. *Clark*, 668 P.2d at 10. Defendant bears the burden of establishing a waiver of the privilege by presenting evidence showing that the privilege holder, "by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Id.* at 8; *see Wesp v. Everson*, 33 P.3d 191, 198 (Colo.2001) (burden of establishing waiver is on the party who seeks to overcome the privilege).

■ We conclude, based on the totality of the circumstances, that the victim did not waive her privilege. First, the case is not one in which the victim is asserting a personal claim or defense in which her mental health is at issue. Second, the testimony itself did not place the substance of her treatment sessions or her post-assault mental condition in issue. Finally, the circumstances of her testimony do not reflect an intent to forego the protections of the privilege.

First, the victim is a witness in this case, not a party seeking personal relief or asserting an affirmative defense based on a claimed physical or mental condition. *See Bond v. District Court*, 682 P.2d 33 (Colo. 1984) (privilege was waived where the privilege holder, in her suit for negligence, requested an award of damages for mental suffering and expenses for psychiatric care). The treatment sessions were conducted after the alleged assault occurred. There is no indication that the victim's post-assault mental condition is at all relevant to the prosecution's case or Defendant's defense.

■ Second, even though the victim is not asserting a personal claim or defense, she may waive the privilege by testifying as to the substance of her treatment sessions or by placing her post-assault mental health in issue. *See People v. District Court*, 719 P.2d at 725. In *Mauro v. Tracy*, 152 Colo. 106, 380 P.2d 570 (1963), this court considered whether the plaintiff's trial testimony waived his physician-patient privilege. Plaintiff testified regarding the extent of his injuries from an accident, the treatments prescribed by his doctors, and the amount they charged for their services. The trial court allowed defendant to call the treating physicians in order to rebut the evidence offered by plaintiff on these issues. This court affirmed, noting that the plaintiff had opened the door by his own statements regarding the details of his treatment. *Id.* at 571. The court of appeals considered a similar issue in *People v. Silva*, 782 P.2d 846 (Colo.App.1989). In that case, the victim of a sexual assault testified at trial that she suffered nightmares and anxiety as a result of the assault and that she was undergoing counseling to help her recover. Defendant sought to question the victim's therapist, claiming that the victim had waived the privilege by placing the content of

her treatment sessions in issue. The court held that the victim's testimony did not amount to a waiver of the privilege, finding that her testimony did not concern the substance of the communications with her therapist. *Id.* at 850.

We hold that the victim's testimony did not place the substance of her treatment sessions in issue. The victim testified that she could not recall exactly when the assault occurred until her sessions with Petitioner. She ultimately came to the conclusion that the assault occurred sometime in December because she remembered being on vacation from school and singing Christmas carols on the way to Defendant's house. The victim testified that Petitioner "helped" her recall some of these details.[1] The only thing this statement reveals is the sort of therapy she was undergoing with Petitioner. The victim did not reveal any specific statements made by either party, or any particular diagnosis or treatment suggestions made by Petitioner.

Finally, we note that the circumstances of the testimony in this case do not indicate an intent on the part of the victim to waive the protections of the privilege. The victim is a minor, called by the prosecutor to testify at a preliminary hearing. Her comments regarding her sessions with the Petitioner were made in response to a question from defense counsel during cross-examination. She did not have counsel present at the hearing to advise her of the protections of her privilege or the possibility that her testimony may waive the privilege.

An argument could be made that there has been a limited waiver with regard to the issue of whether the assault occurred in November or December and therefore, the trial court should be allowed to review Petitioner's files and records for any information relevant to that fact.[2] While this solution seems in-

nocuous, there would still be significant harm to the psychologist-patient relationship. The relationship between therapist and patient must be confidential. The possibility that documents relating to treatment may later be obtained in discovery decreases the likelihood that a victim will seek treatment, let alone be willing to reveal intimate details during treatment. The mere threat of disclosure destroys the sanctity of the psychologist-patient relationship. For this reason, we will not hastily find an implied waiver of the privilege in this type of situation.

It is true, as Defendant points out, that the source of victim's memory regarding the assault affects her credibility as a witness. Petitioner's notes and records may assist Defendant in impeaching the credibility of the victim's testimony regarding the assault. Defendant is, of course, free to cross-examine the victim on the reliability of her memories and to point out any inconsistencies between her testimony at trial and her earlier statements to police. However, because the victim has not waived her psychologist-patient privilege, Defendant may not obtain any documents relating to victim's sessions with Petitioner.

## IV. CONCLUSION

We conclude that the victim did not waive the psychologist-patient privilege by testifying at the preliminary hearing. Therefore, we hold that the trial court did not have the discretion to order Petitioner's records be disclosed during discovery, even for *in camera* review. Thus, we now make the rule to show cause absolute.

Justice MARTINEZ does not participate.

---

1. Defendant asserts that victim's testimony raises the possibility that her memories were derived as a result of hypnosis. Therefore, he contends, discovery of Petitioner's notes and records is warranted to determine whether victim's testimony is admissible as competently based on her own perception. *See People v. Romero*, 745 P.2d 1003, 1016 (Colo.1987) (holding that the trial court must make an individualized inquiry in each case to determine whether the trial testimony of a witness who has been hypnotized will be

sufficiently reliable to qualify for admission). We find the victim's testimony insufficient to support this argument.

2. Nothing in the court order suggests that the trial judge was going to do such a limited review. The record indicates only that he intended to determine whether the records contained something "relevant."